# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| HELM BUILDERS, LLC, | ) |
| Plaintiff, | ) |
| v. | ) 1:11CV187 |
| UNITED BANK & TRUST COMPANY, VERSAILLES, KY, d/b/a UNITED BANK AND TRUST COMPANY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on (1) Plaintiff's Motion for a New Trial (Doc. #140); and (2) Plaintiff's Motion to Alter/Amend the Judgment (Doc. #142). For the reasons that follow, the instant Motions will be DENIED.

I.

This action arises from a dispute over non-payment of funds owed to Plaintiff after construction of a hotel in Durham, North Carolina. Specifically, Plaintiff entered into a contract in the amount of $13,050,000.00 with non-party Shrijee, LLC ("Shrijee") to construct the Hotel Indigo. Shrijee received financing for that project through Defendant in the amount of $13,600,000.00. Although Plaintiff completed construction, due to various cost-overruns, it did not receive the final amounts owing to it under its contract with Shrijee. By way of the instant action, Plaintiff contends that Defendant, through affirmative misrepresentations and/or fraudulent concealment, induced Plaintiff to continue work on the project despite Defendant's own knowledge of the insufficiency of available funds.

Plaintiff's Amended Complaint presented the following seven claims for relief: (1) Unfair and Deceptive Trade Practices ("UDTPA"); (2) Fraud; (3) Fraud

in the Inducement; (4) Unjust Enrichment; (5) Rescission - Fraud (as an alternative to Plaintiff's unjust enrichment claim); (6) Negligence (as an alternative claim); and (7) Negligent Misrepresentation. See generally Doc. #38. At the close of discovery, the Parties filed cross motions for summary judgment. See Docs. #66, 69. The Honorable Catherine C. Eagles, United States District Judge, held a hearing on those Motions on April 30, 2013 (see Docket Entry dated April 30, 2013), and, by way of Order dated May 2, 2013, denied both (see Doc. #81 at 1). This matter was then set for trial in July 2013. See Docket Entry dated June 10, 2013.

A three-day final pretrial conference was held between July 3 and July 9, 2013. See Docket Entries dated July 3, 2013, July 8, 2013, July 9, 2013. At that time, the Parties extensively argued the evidence and case law underlying Plaintiff's claims. After the Parties' showings, Plaintiff was foreclosed from pursuing claims based on the theory that Defendant failed to disclose certain information regarding the insufficiency of available funds. In addition, it was found that, on the facts of this case, Plaintiff's UDTPA claim was necessarily dependent on the success of Plaintiff's claims for negligent and intentional misrepresentation. After a four day trial, the jury was ultimately charged with finding only whether Plaintiff satisfied elements of negligent or intentional misrepresentation as to each of four separate alleged representations (see Doc. #138). However, through discussions with the Parties, it was made clear that, should the jury find that any of those four alleged misrepresentations supported Plaintiff's negligent and/or intentional misrepresentation claim, Defendant would be liable for Plaintiff's UDTPA claim as well on those same facts. Regardless, the jury returned a verdict in favor of Defendant. See id. Of note, in so doing, the jury found not only that none of the four asserted

misrepresentations were false (see id. at 1-3), but also that Plaintiff did not rely on those representations (see id. at 4-6).

Plaintiff has now filed the instant Motions seeking a new trial or that the judgment be altered or amended. Plaintiff specifically assigns fault to (1) the failure to submit instructions and issues of non-disclosure to the jury and the foreclosure of evidence regarding the same;[1] (2) the failure to submit instructions and issues to the jury regarding Plaintiff's UDTPA claim; (3) the exclusion of certain FDIC documents from evidence; (4) the form of the verdict sheet; and (5) interruptions of Plaintiff's counsel by the Court. In addition, Plaintiff contends that the verdict is against the clear weight of the evidence. See Doc. #141 at 7. Defendant responded (see Docs. #148, 149) and Plaintiff Replied (see Docs. #151, 152).

II.

Plaintiff brings its Motions under subsections (a) and (e) of Rule 59 of the Federal Rules of Civil Procedure. On a Rule 59(a) motion, District Courts are to "'set aside the verdict and grant a new trial if (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" Knussman v. Maryland, 272 F.3d 625, 639 (4th Cir. 2001) (quoting Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir.1996)). A new trial may be

---

[1] Defendant contends that Plaintiff's Motion should be denied at the outset with respect to any argument regarding the exclusion of evidence of Defendant's alleged non-disclosure to Plaintiff because Plaintiff failed to make a sufficient offer of proof. See Doc. #148 at 8. Given the extensive discussions on that topic that occurred immediately prior to and during trial and the ruling that Plaintiff would not be permitted to pursue claims on that theory, this Memorandum Opinion considers the issue preserved as "apparent from the context." See Fed. R. Evid. 103.

granted "on all or some of the issues . . . to any party . . . for any reason for which a new trial has heretofore been granted in an action in federal court." Fed. R. Civ. P. 59(a). Under Rule 59(e), a court may "alter or amend the judgment if the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." Robinson v. Wix Filtration Corp., 599 F.3d 403, 407 (4th Cir. 2010). "[T]he rule permits a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (quotation marks and citation omitted).

### III.

### A.

Initially, Plaintiff finds fault with the decision to foreclose it from pursuing, and to exclude evidence regarding, any claims based on the theory that Defendant failed to disclose certain information to Plaintiff, whether presented as part of a fraudulent concealment theory or as grounds for a UDTPA claim.[2] In fact, as an initial matter, Plaintiff generally appears to take issue with any conclusion, made during the final pre-trial conference, of the sufficiency of the evidence supporting, or of the state of the law underlying, its claims given the previous denial of Defendant's summary judgment motion. See Doc. #140, ¶ 9. In this regard, under Rule 54(b) of the Federal Rules of Civil Procedure, "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final

---

[2] Plaintiff, however, was made aware that should evidence come in which would establish such a duty between the Parties, the topic would be re-addressed.

judgment when such is warranted." American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-515 (4th Cir. 2003) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991)). Moreover, "[i]t is the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 526 (4th Cir. 2003) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993)). Accordingly, any consideration of the sufficiency of Plaintiff's claims was not improper regardless of the previous denial of Defendant's summary judgment motion.

With respect to this issue specifically, the arguments that Plaintiff now presents were adequately addressed prior to and during trial, and Plaintiff offers nothing that would suggest a different outcome on their instant consideration. Indeed, Plaintiff's Memorandum in support of its instant Motion cites a number of cases either representing factual scenarios in which a duty to speak does exist (see Doc. #141 at 10-11), or stating that whether a duty does exist is a question for the jury (see id. at 10), that Plaintiff has previously presented and which have been duly considered. As was the case then, the authority that Plaintiff cites, including previously unaddressed authority, represent factual scenarios in which the contacts between the parties are more significant than those presented here. See, e.g., Dallaire v. Bank of Am., N.A., ___ N.C. App. ___, ___, 738 S.E.2d 731, 735 (2012); Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 92-93, 693 S.E.2d 149, 155-56 (2010). Plaintiff, however, has presented no persuasive authority for its position that, under circumstances similar to this case, a bank owes a duty to disclose a borrower's ability to pay its contractual obligations to the borrower's contracting party. Accordingly, having presented insufficient evidence for a reasonable finder of fact to

conclude that such a duty existed between the Parties in this case, or authority suggesting that such a duty might exist on the forecast evidence, there was no error in foreclosing Plaintiff's claims based on any such duty from proceeding to trial.[3]

B.

Plaintiff also challenges the determination that the elements of Plaintiff's UDTPA were subsumed by the elements of Plaintiff's negligent or intentional misrepresentation claims and that, accordingly, jury instructions addressing only Plaintiffs negligent and intentional misrepresentation claims sufficed for Plaintiff's UDTPA claim as well. As it did at trial, Plaintiff challenges that conclusion by citing general language from North Carolina courts noting that a UDTPA claim can exist absent an independent tort and that reliance is not a necessary element. Although those statements may be correct as general propositions of the law, see Estate of Hurst v. Moorehead I, LLC,    N.C. App.   , 748 S.E.2d 568 (2013), in the context of this case, where alleged misrepresentations were the only factual basis for Chapter 75 liability, actual reliance would, in fact, be necessary to establish its claim, see Bumpers v. Community Bank of N. Va.,    N.C.   ,   , 747 S.E.2d 220, 226 (2013) ("[A] claim under section 75-1.1. stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause. Such a requirement has been the law of this state for quite some time."); Sunset Beach Dev., LLC v. AMEC, Inc., 196 N.C. App. 202, 211 (2009) (finding that "[w]here an unfair or

---

[3] For this same reason, any contention by Plaintiff that the Court's instruction to the jury regarding the lack of any such duty was improper is also insufficient grounds for a new trial or an alteration or amendment of the judgment.

deceptive practice claim is based upon an alleged misrepresentation by the defendant," actual reliance on that misrepresentation is necessary to establish proximate cause).[4]

To the extent Plaintiff instead challenges the finding that its UDTPA claim was based solely upon allegations of misrepresentations and not some other tort or misdeed (and thus required the reliance element as noted above), Plaintiff's argument is unpersuasive. In pretrial discussions, Plaintiff made vague references to Defendant's "conduct," but ultimately presented evidence only of the four alleged communications between Defendant and Plaintiff that were presented to the jury. Plaintiff now fails to present arguments warranting a different conclusion through its instant Motions. Accordingly, there is again an insufficient basis to warrant a new trial or an alteration or amendment of the judgment.

C.

Plaintiff further assigns error to the exclusion of certain FDIC Consent Orders from evidence. Defendant did not disclose the documents in question during the course of discovery. Plaintiff, however, independently discovered

---

[4] Given: 1) the determination that Plaintiff's UDTPA claims stemmed from negligent or intentional misrepresentation; 2) the corresponding authority providing that, in such circumstances, reliance is a necessary element of a UDTPA claim, see Bumpers, ___ N.C. at ___, 747 S.E.2d at 226; and 3) the jury's findings that Plaintiff did not rely on any of Plaintiff's alleged misrepresentations (see Doc. #138 at 1-6), there is no need to determine whether Plaintiff's UDTPA claim may have succeeded where its negligent and intentional misrepresentations claims failed due to a distinction between the mental culpability required of those claims. See, e.g., Curtis B. Pearson Music Co. v. Everitt, 368 F. App'x 450, 457 (4th Cir. 2010) (Gregory, J., concurring in part and dissenting in part) ("[A] defendant's subjective belief or intent does not determine whether that defendant's conduct is deceptive; rather the effect that conduct would have on the average person does. North Carolina courts do not require a plaintiff seeking UDTPA recovery to prove a defendant's intent to deceive precisely because the statute was designed to provide redress to plaintiffs whose fraud claims were not cognizable due to the difficulty inherent in proving a defendant's subjective state of mind." (internal citations omitted)).

their existence approximately two weeks prior to trial. On July 3, 2013, Defendant filed a Motion in Limine to exclude their admission (see Doc. #123), and Plaintiff responded with two Memoranda of Supplemental Authority supporting its position that the documents should be admitted (see Docs. #126, 133). On July 8, 2013, the second day of the final pretrial conference, Plaintiff brought the existence of those documents to the Court's attention and argued that they revealed a requirement on the part of Defendant to report certain substandard loans, and, thus, suggested a motive for Defendant to take action that would keep the loan at the center of this action in good standing. According to Plaintiff, Defendant accomplished this by directing funds from a second loan made to Shrijee to itself for interest payments on Shrijee's first loan rather than paying the proceeds of that loan to Plaintiff.

The Court conducted an in camera review of both the FDIC Consent Orders and the FDIC audit reports at the heart of those Orders and concluded that, because the documents did not specifically address the loan underlying Plaintiff's claims, Defendant did not violate a discovery request in not turning over the material in question. Moreover, for that same reason, and because the documents offered nothing to support Plaintiff's claims, the Court determined that, standing alone, they were not indicative of motive and would be prejudicial to Defendant, and thus they could not be introduced as evidence. The Court further determined that Plaintiff could reference those documents for the purpose of refreshing a witness's recollection or impeachment.

In the Motions currently before the Court, Plaintiff appears to merely re-argue its position regarding the relevancy of these documents but does not cite any error in excluding their admission. See Doc. #151 at 8-9. Because these arguments are the same as those made during the final pretrial conference,

Plaintiff again fails to present a basis for a new trial or an alteration or amendment of the judgment.

D.

Plaintiff next takes issue with the Court's interruptions of Plaintiff's counsel by way of self-sustained objections and instructions to the jury to disregard certain questions and/or arguments. See Doc. #141 at 16-20. Plaintiff cites no specific error, but argues that the Court's exercise of its power might have prejudiced the jury based on counsel's "firm belief based upon years of jury trial experience that juries brand 'good guys and bad guys.'" Id. at 17.

Plaintiff's argument is based only on its own speculation. Plaintiff cites no indication that the Court's action had any effect on the deliberations of the jury. The fact that the Court called Plaintiff's counsel to the bench multiple times and sustained its own objections to certain question does not, in itself, offer any basis for a new trial or an alteration or amendment of the verdict. Indeed, "[i]t is, of course, settled beyond doubt that in a federal court the judge had the right, and often an obligation, to interrupt the presentations of counsel in order to clarify misunderstandings or otherwise insure that the trial proceeds efficiently and fairly." U.S. v. Cole, 491 F.2d 1276, 1278 (4th Cir. 1974). Plaintiff's concerns are more appropriately addressed by way of Plaintiff's arguments as to the substance of the Court's rulings.

E.

Plaintiff also assigns fault to the final form of the verdict sheet.[5] Specifically, Plaintiff notes that it "took exception to the submission by the Court of a 'special verdict' form containing more than forty (40) separate issues" and notes that "[c]ases in both state and federal courts are tried virtually every day involving the use of general verdict issues proposed by Plaintiff." Doc. #141 at 15. Indeed, throughout discussions on the verdict sheet, Plaintiff expressed a preference for a general verdict form. However, Defendant requested a special form and, at the close of evidence, which fell on the afternoon of Friday, July, 12, 2013, the Parties came to an agreement on a verdict form that requested the jury answer "yes" or "no" to each of the elements of Plaintiff's claims for negligent and intentional misrepresentation. When the Parties reconvened the following Monday, July 15, 2013, Defendant further requested that the verdict form not only address each element of those two claims, but that it require the jury to respond to those elements separately as to each of the four alleged misrepresentations. Because said form would (1) streamline the damages portion of the proceedings should the jury find in favor of Plaintiff given that the trial was bifurcated; and (2) prevent the jury from "mixing and matching" the elements of Plaintiff's claims with respect to the four discrete representations, the verdict sheet was revised accordingly. Plaintiff was offered the opportunity to recess until the following morning

---

[5] In its brief in support of its instant Motions, Plaintiff's reference that it "took exception to the submission by the Court of a 'special verdict' form" is contained within its argument that the verdict is against the clear weight of the evidence. See Doc. #141 at 15. Because it is unclear whether this issue is submitted as a separate basis supporting Plaintiff's instant Motions, this Memorandum Opinion addresses it separately.

should it need more time to adequately prepare in light of the revised verdict sheet, but declined that invitation.

Rule 49 of the Federal Rules of Civil Procedure affords the trial judge wide discretion in fashioning an appropriate verdict sheet. See International Ground Transp. v. Mayor and City Council of Ocean City, Md., 475 F.3d 214, 223 (4th Cir. 2007) ("[Rule 49] permits the district court to submit various questions to the jury in lieu of a general verdict and gives the court wide discretion in fashioning appropriate inquiries."); Talkington v. Atria Reclamelucifers Fabrieken BA, 152 F.3d 254, 266 (4th Cir. 1998) ("'The use of special verdicts rests with the discretion of the district court.'" (quoting Bristol Steel & Iron Works, Inc., v. Bethlehem Steel Corp., 41 F.3d 182, 190 (4th Cir. 1994)); Fox v. Dynamark Sec. Ctrs., Inc., 885 F.2d 864, 1989 WL 106802, at *6 (4th Cir. Sept. 1, 1989) ("Although the form of the verdict is committed to the discretion of the trial judge, this court must consider whether the form adequately presented the contested issues to the jury when read as a whole and in conjunction with the general charge, whether submission of the issues to the jury was fair, and whether the ultimate questions of fact were clearly submitted to the jury." (internal quotation marks and citation omitted)). Plaintiff offers no indication that the form submitted to the jury violates that discretion and further offers no argument that the verdict form was unfair, confusing, or misleading. See Doc. #141 at 15-16. Accordingly, Plaintiff's exception to the verdict form fails to offer a basis for a new trial or an alteration or amendment of the judgment.

IV.

As a final matter, Plaintiff contends that the verdict itself is against the clear weight of the evidence. See Doc. #141 at 15-16. Plaintiff's arguments in this regard address only two of the four alleged misrepresentations that the

jury ultimately considered: (1) a February 22, 2008 letter provided to Plaintiff from an executive vice president and chief lending officer of Defendant, Mike Schornick; and (2) a July 30, 2009 voicemail from an attorney for Defendant, Ike Fleming.

A.

Through the February 22, 2008 letter, Mr. Schornick stated that a minimum of $13,050,000 of Shrijee's construction loan had been allocated for payment to Plaintiff. The jury found both that this statement was not false and that Plaintiff did not rely on that statement. See Doc. #138. Plaintiff's Memoranda in support of its instant Motions appears to challenge primarily the jury's finding with respect to the falsity of that statement. See Doc. #141 at 15-16; Doc. #151 at 5-6. In this regard, as Plaintiff notes, Mr. Schornick testified that no amount of the loan had been allocated for construction of the building (see Doc. #144 at 41), and, when asked more specifically whether "the bank allocated the $13,050,000 from the $13,600,000 construction loan" as the letter stated, responded: "We were never going to allocate $13,050,000" (see id. at 78). In response, Defendant notes that, when asked whether that statement was false, Mr. Schornick testified: "I don't believe it to be false, no. We controlled the money on the bank's side subject to these provisions. If these provisions had been met, between Shrijee's money and the bank's money, the 13,050,000 would have been paid." Id. at 86-87. On this testimony, there is some merit to Plaintiff's argument. That is, even allowing some ambiguity in the term "allocate," Mr. Schornick conceded that the funds intended to pay Plaintiff were never to be drawn solely from Defendant's construction loan as provided in the statement contained in his letter.

Regardless, the evidence is more than sufficient to support the jury's conclusion that Plaintiff did not rely on that statement, thus rendering any discussion of the jury's verdict as to its falsity moot. Plaintiff entered into its contract with Shrijee and began work on the project more than two months before Mr. Schornick penned the letter in question, and Plaintiff had received over $300,000 of payment directly from Shrijee by that time. Moreover, Scott McAllister, president and managing member of Plaintiff, testified that neither Mr. Schornick nor anyone else associated with Defendant spoke with Plaintiff prior to the time Plaintiff agreed to undertake the construction project. Further, the letter expressly stated that it was being provided for use in acquiring a payment and performance bond, and Plaintiff did in fact use the letter for that purpose. Accordingly, the jury's conclusion that Plaintiff did not rely on the letter in its decision to begin or continue construction of the project is adequately supported by the evidence and the jury's verdict should not be disturbed.

B.

As to the second alleged misrepresentation, the July 30, 2009 voicemail references a second loan Defendant provided to Shrijee. In order for Shrijee to receive that loan, it was necessary for Plaintiff to sign an affidavit and lien waiver. With respect to that document, Ike Fleming, an attorney for Defendant, called Mr. McAllister and left the following voicemail:

> Scott, this is Ike Fleming. I'm Jack – well, I'm actually United Bank's attorney in Lexington, Kentucky, that's made the loan on the new Indigo hotel and that [sic] you're constructing. I've sent down a mechanic's lien, contractor's affidavit that we simply need to get you stated [sic] is that you're not aware of any liens or potential liens. I think you're reading the document correctly.

> I know we – we're not asking you to waive any lien rights, we're just absolute – asking you to waive is that no one has a right to serve a lien at this point in time or has threatened to file a lien at this point in time. There's actually no new money being disbursed, so the bank's not going to exceed you with respect to the property itself. It's been taken as additional collateral on the second mortgage <u>with the funds being used to pay you-all</u>.
>
> So, if you would, please, give me a call. I need you to sign that document. <u>That's how you're going to get paid, I guess ultimately, to whatever extent is left on your contract</u>.

Doc. #145 at 70 (emphasis added). However, the funds from Shrijee's second loan were paid back to Defendant for interest on Shrijee's first loan and were not ultimately paid to Plaintiff.

The jury again found that these representations were not false and that Defendant did not rely on those representations (<u>see</u> Doc. #138 at 3), and Plaintiff again appears to challenge the jury's verdict regarding the falsity of those statements (<u>see</u> Doc. #141 at 15-16; Doc. #151 at 5-6). To support its argument, Plaintiff highlights Mr. Fleming's admitted lack of knowledge regarding the use of the proceeds from the second loan (<u>see</u> Doc. #151 at 5-6) as well as the following testimony from Mr. Schornick:

> Q: The statement, 'that's how you're going to get paid, I guess ultimately to whatever extent the there is any left on your contract.' Was that a true statement?
>
> A: Not entirely.

<u>Id.</u> #151 at 6. Mr. Fleming also testified that, when leaving the voicemail, he understood that "the loan was for the purpose of paying for the cost of construction of the hotel" (<u>see</u> Doc. #146 at 49). Moreover, Mr. Schornick testified that the intent was that the second loan would be used to pay Defendant, although he also conceded that Shrijee owed Defendant more than

was available to be disbursed, even taking funds from the second loan into account. See Doc. #145 at 73-75.

Here, as with the prior challenged representation, this evidence may provide some basis for Plaintiff's argument as to the verdict regarding the statement's falsity; however, since there was more than sufficient evidence supporting the jury's conclusion regarding Plaintiff's reliance, the question of falsity is moot. That is, the evidence shows that Defendant's work was substantially complete at the time Mr. Fleming left the voicemail in question. Moreover, Mr. Fleming's inclusion of "I guess" reflects on the equivocal nature of the information he provided. Accordingly, the evidence is again sufficient to support the jury's verdict and there is no basis for a new trial or an alteration of amendment of the judgment.

V.

For the reasons set forth above, Plaintiff's Motion for a New Trial (Doc. #140) and Plaintiff's Motion to Alter/Amend the Judgment (Doc. #142) are DENIED.

This the  14th  day of May, 2014.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge